[No. 18224.   Department One.   January 17, 1924.]

JAMES VALENTINE, *as Administrator, etc., Respondent,* v. JOHN P. DUKE *et al., Appellants.*[1]

EXECUTORS AND ADMINISTRATORS (40)—COLLECTION OF ASSETS— POWERS. A foreign executor who succeeds to the title to the decedent's securities deposited in a bank and may pass good title, has power to appoint the bank his agent to collect on the securities and credit the proceeds to the decedent's savings account.

BANKS AND BANKING (26)—TRUST FUNDS—GENERAL OR SPECIAL DEPOSITS. A foreign executor, who directs a bank to collect on the decedent's securities on deposit with it and credit the proceeds to decedent's savings account, divests the money so credited of any trust attributes, and the estate becomes a simple depositor and a general creditor only.

Appeal from a judgment of the superior court for King county, Davidson, J., entered April 14, 1923, upon findings in favor of the plaintiff, in an action to establish a preferred claim against an insolvent bank, tried to the court. Reversed.

*W. V. Tanner* and *John P. Garvin,* for appellants.

*Lyons & Orton, Battle, Hulbert, Gates & Helsell,* and *Edward G. Dobrin,* for respondent.

[1]Reported in 222 Pac. 494.

Tolman, J.—This is an appeal from a judgment allowing as a preferred claim against the Scandinavian-American Bank the sum of $1,386. The facts are not in dispute. It appears that Captain James C. Blaine, a resident of Alaska for some years prior to his death, which occurred on March 4, 1921, had a savings account in the Scandinavian-American Bank of Seattle, and also had on deposit with that bank certain securities purchased of or through the bank by the use of funds from the savings account. It was the custom for the bank to make collections of interest and principal upon such securities as they matured, and credit such collections to Captain Blaine's savings account, reinvesting from the savings account as opportunity offered.

After the death of Captain Blaine, one B. M. Behrends, of Juneau, Alaska, qualified as his executor, and on March 28, 1921, wrote to the bank notifying it of the death of Blaine, and of his appointment and qualification as executor, giving a list of the securities belonging to the estate which he believed the bank held, and asking that these securities and the savings balance be sent to him if that were possible, intimating that, if the bank should consider it improper to send him the money and securities, he would have application made for ancillary administration in the state of Washington. The bank replied under date of April 6, 1921, confirming its possession of the securities as listed by the executor, stating that the savings account balance was $8,157.27, but declined to surrender possession to the foreign executor. Answering this letter on April 19, 1921, the executor, among other things, said:

"It will require in the neighborhood of at least six to eight months to close this estate under the Alaska Statutes, and pending the winding up of the estate there would be no reason why the deposit, as well as the other securities belonging to the estate, could not

5—128 wash.

be left in your institution. My sole idea is, if possible, to save the double and practically useless expense of an ancillary administration in the state of Washington, but I would not wish your institution to incur any liability in any way by such course. It has occurred to me that the matter could be handled by having the savings account in your bank transferred to my account as executor, and then when the final order of distribution was made, I could distribute the funds, as well as the securities in your institution, direct to the beneficiaries. You, of course, would have to be protected on the inheritance tax, but I thought that that could be easily done by paying directly to the State of Washington the amount of such inheritance tax before either the funds or the securities were distributed to the heirs, so that the state could not come back on you for the tax.''

Subsequent to the death of Captain Blaine, and before the bank failed, it collected as interest and principal upon these securities in its hands the amount now in controversy and credited that amount to the Blaine savings account. As each collection was received, the bank sent a duplicate credit slip by mail addressed to James C. Blaine, and with the first of these credit slips was sent a letter advising that a renewal of the mortgage, upon which interest was thus accounted for, had been made, and stating: ''Subsequent payments will be credited to your account as in the past.'' That this communication reached the executor is shown by the fact that his attorney replied thereto questioning the propriety of the renewal or extension of the mortgage; but no objection was made then or at all to collections being made by the bank or to the proposed crediting of the proceeds to the savings account. Presumably the other credit slips were likewise received. Thereafter respondent was appointed administrator with the will annexed in this state, filed his claim demanding a preference, and upon its rejection as a preferred claim and

its allowance as a general claim only, this action was instituted, resulting in the judgment from which this appeal is prosecuted.

It may be accepted as a general rule that the death of the principal terminates the agency. *Long v. Thayer,* 150 U. S. 520, 37 L. Ed. 1167; *Gilmore v. Continental Casualty Co.,* 58 Wash. 203, 108 Pac. 447, and that Blaine's death revoked the authority of the bank to make further collections; still, that does not meet the question here presented. From the facts already stated, the only conclusion to be drawn is that the foreign executor, with full knowledge of the situation, acquiesced in such acts by the bank and, tacitly at least, made it his agent to collect, and authorized the deposit of the proceeds in the savings account. The real question here is, had the foreign executor power to appoint an agent to collect and receive personal property belonging to the estate beyond the jurisdiction of the court by which he was appointed?

"Domiciliary Representative. The general rule is that the title of a domiciliary representative extends to all of decedent's personal estate wherever situated, although in some jurisdictions the title of the domiciliary representative is held to be limited to assets within the jurisdiction. The title of the domiciliary representative is not, however, commensurate with that of the owner while living. It will not authorize the representative to sue outside of the jurisdiction of his appointment, or to interfere in any way with an ancillary administration; but when there is no local administration, it is a title which other jurisdictions will recognize through comity, which debtors of the estate in other jurisdictions may recognize and will be protected in recognizing, and which will give validity to many acts of administration in other jurisdictions which can be performed without recourse to the courts." 24 C. J. 1118.

See, also, *In re Crosby,* 42 Wash. 366, 85 Pac. 1.

"The administrator, by virtue of his appointment and authority as such, obtains the title in promissory notes or other written evidences of debt, held by the intestate at the time of his death, and coming to the possession of the administrator; and may sell, transfer and indorse the same; and the purchasers or indorsees may maintain actions in their own names against the debtors in another state, if the debts are negotiable promissory notes, or if the law of the state in which the action is brought permits the assignee of choses in action to sue in his own name. *Harper v. Butler*, 2 Pet. 239; Shaw, C. J., in *Rand v. Hubbard*, 4 Met. 252, 258- 260; *Petersen v. Chemical Bank*, 32 N. Y. 21. And on a note made to the intestate, payable to bearer, an administrator appointed in one state may sue in his own name in another state. *Barrett v. Barrett*, 8 Me. 353; *Robinson v. Crandall*, 9 Wend. 425." *Wilkins v. Ellett*, 108 U. S. 256, 27 L. Ed. 718.

See also, *Union Trust Co. of San Francisco v. Pacific Telephone & Telegraph Co.*, 31 Cal. App. 64, 159 Pac. 820, and *In re Cape May D. B. N. Co.*, 16 Atl. (N. J.) 191.

The respondent then had such title to the securities as would have permitted him to make sale thereof and pass good title to the purchaser, and he could undoubtedly have directed the bank not to make further collections. By permitting the bank to collect and credit the proceeds to the savings account, he made the bank his agent for that purpose. The money when so credited lost any trust attributes which it may have before had, and the estate became a simple depositor, and therefore a general creditor only.

The judgment is reversed with directions to dismiss the action.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.