[No. 12843-1-III.  Division Three.  February 15, 1994.]

THE DEPARTMENT OF RETIREMENT SYSTEMS, *Appellant*, v. DENNIS KRALMAN, ET AL, *Defendants*, BAKER BOYER BANK, INC., *Respondent*.

26

*Christine O. Gregoire, Attorney General,* and *Alice M. Blado, Assistant,* for appellant.

*James K. Hayner* and *Minnick — Hayner, P.S.,* for respondent.

SCHULTHEIS, J. — The Washington State Department of Retirement Systems (DRS) appeals the summary judgment dismissal of its claim for return of certain monthly retirement payments. DRS directly deposited the disputed payments in Edna Kralman's account at Baker Boyer Bank (the Bank) for 11 years after her death. DRS contends (1) the Bank's authority to accept the direct deposits terminated at Mrs. Kralman's death; and (2) the Bank negligently failed to inform DRS of Mrs. Kralman's death. We affirm.

Edna Kralman retired from teaching, effective July 1, 1969, and selected a maximum retirement allowance from the Teachers' Retirement System (TRS).[1] This option allowed her to receive all of her retirement benefits during her lifetime; her right to benefits ended at her death.

In 1975, Mrs. Kralman executed a "Washington State Teachers' Retirement System Authorization for Deposit of Payments" (Authorization) which authorized TRS to directly deposit her retirement payments to a joint account at the Bank, which she shared with her husband. The authorization did not require the Bank to notify DRS in the event of Mrs. Kralman's death. DRS transmitted Mrs. Kralman's retirement payments by electronic funds transfer (EFT) to the Bank, with instructions as to how much her account should receive. These EFT's were not accompanied by restrictions of any kind. DRS never requested the Bank to notify it of Mrs. Kralman's death.

In November 1978, Mrs. Kralman died. Within a week of her death, Mr. Kralman removed her name from the account and added the names of their two children. The Bank received notice of Mrs. Kralman's death at this time.

Both Mr. and Mrs. Kralman received Social Security benefits by a similar direct deposit method into their joint account. In December 1978, the Bank returned Mrs. Kralman's December Social Security payment to the federal government, and by January 1979 the Bank had received a

---

[1]The DRS administers TRS and brought this lawsuit on its behalf.

record of collection from the United States Treasury acknowledging return of the funds and the reason for the return: Mrs. Kralman's death.

In October 1989, Mr. Kralman died. For the 11 years between Mr. and Mrs. Kralman's deaths, DRS continued to transmit EFT's to the Bank for Mrs. Kralman's monthly retirement payments. After Mr. Kralman died, the Bank notified DRS that both Kralmans were deceased, and DRS terminated the monthly payments. Between November 1978 and October 1989, DRS transferred $21,590.84 to the Bank to be deposited in Mrs. Kralman's account.

DRS filed a lawsuit against the two surviving Kralman children and the Bank to recover the retirement payments transmitted after Mrs. Kralman's death. The Bank and the children filed separate motions for summary judgment, and DRS filed a cross motion for summary judgment. The court granted the Bank's and the children's motions and denied DRS's motion, dismissing the case with prejudice.

On appeal, only DRS's complaint against the Bank is at issue. DRS has not appealed the ruling which granted the children's motion for summary judgment.

DRS first argues that the Bank lacked authority to accept Mrs. Kralman's retirement checks after her death because the Bank was an agent for Mrs. Kralman, and its agency terminated at her death.

Unless displaced by the particular provisions of the Uniform Commercial Code (UCC), the law of principal and agent supplements the UCC. RCW 62A.1-103; *Gorge Lumber Co. v. Brazier Lumber Co.*, 6 Wn. App. 327, 334, 493 P.2d 782 (1972). Moreover, the UCC provides a very strong presumption of agency in this area. *See* RCW 62A.4-201 and Washington comments thereto.

The common law of agency recognizes that a bank receiving an item for collection is the agent of its customer. *State v. Moore*, 189 Wash. 680, 688, 66 P.2d 836 (1937). For purposes of receiving an EFT and crediting its customer's account, a bank may be the agent of its customer. *Shawmut Worcester Cy. Bank v. First Am. Bank & Trust*, 731 F. Supp.

57 (D. Mass. 1990). An agency relationship exists when one party consents to the other party's acting on his or her behalf and subject to his or her control, and the other party consents to act on the principal's behalf and subject to the principal's control. *Moss v. Vadman,* 77 Wn.2d 396, 463 P.2d 159 (1969).

Once the money is deposited in a customer's general account, the money becomes the bank's property, and the bank becomes a debtor to its customer. *Peters v. Sjoholm,* 95 Wn.2d 871, 875, 631 P.2d 937 (1981), *cert. denied,* 455 U.S. 914 (1982); *Allied Sheet Metal Fabricators, Inc. v. Peoples Nat'l Bank,* 10 Wn. App. 530, 537, 518 P.2d 734, *review denied,* 83 Wn.2d 1013, *cert. denied,* 419 U.S. 967 (1974). However, the bank cannot deposit the money until it receives it, and its authority to receive the money derives from its authority to act as the customer's agent.

In this case, it is undisputed the Bank was, initially, authorized to accept direct deposits from TRS on behalf of Mrs. Kralman, under the terms of a written agreement signed by both Mrs. Kralman and the Bank's officer. This writing manifested the necessary mutual consent to create an agency; although Mrs. Kralman could not control the Bank in many of its actions, she and the Bank had mutually consented that she could control whether or not the Bank would receive her retirement checks.

As a general rule, the death of the principal terminates the agency. *Valentine v. Duke,* 128 Wash. 128, 131, 222 P. 494 (1924). Hence, the former agent can no longer bind the principal. An agent who purports to make a representation on behalf of another, but has no power to bind, is personally liable for the damages caused. *Routh v. Wagner,* 53 Wn.2d 347, 349-50, 333 P.2d 674 (1959); *Glendale Realty, Inc. v. Johnson,* 6 Wn. App. 752, 756, 495 P.2d 1375 (1972); Restatement (Second) of Agency § 329 (1958).

■■ However, one is not entitled to rely on an agent's representation when put on notice that a question exists as to the agent's authority. *Amtruck Factors v. International Forest Prods.,* 59 Wn. App. 8, 19, 795 P.2d 742 (1990),

*review denied*, 116 Wn.2d 1003 (1991); *Glendale*, at 756-57. An agent has a defense to an action based upon its supposed warranty of authority if a party had reason to and could inform itself about the agent's authority. *Glendale*, at 757.

In this case, DRS had reason to know and could have informed itself that there was a question as to the Bank's authority. DRS's reason to know derives directly from state statute and regulations. RCW 43.08.085, before its repeal in 1993, placed the burden on the State to provide each initial depository financial institution with directions for the amount to which a recipient is entitled:

> Directions shall be provided to such financial institution as to the amount to be credited to the account of each recipient or to be transferred to an account in another financial institution for such recipient.

Washington state regulations based on the foregoing statute provide the most concrete reason for DRS to know that Mrs. Kralman was no longer entitled to retirement payments. The regulations establish requirements for state agencies providing recipients with "state funded public employees' retirement benefits". WAC 82-20-010(3); WAC 82-20--030. The state agency is required to establish a positive system of verifying that amounts transferred are actually due:

> The agency is to establish controls to prevent loss of state funds. Controls are to include a *positive system of* validating the amounts to be transferred and *verifying that the amounts to be transferred for a recipient are actually due* for work performed or benefits due.

(Italics ours.) WAC 82-20-030(1). This positive system of verification applies specifically to EFT's. WAC 82-20-010(1).

Based on the undisputed facts of this case, the law requires the State to verify an amount is due to a recipient. This requirement places the burden on the State to know whether Mrs. Kralman was entitled to continue to receive retirement checks, and whether the Bank was her authorized agent. Contrary to DRS's contention, it was not enti-

tled to sit idly by, blindly sending retirement checks until someone told it to stop; it was on notice by state regulations that it had to find out whether the amounts it sent were actually due. Therefore, the Bank is not liable under the law of agency.

DRS next argues that under RCW 62A.4-405, the Bank's authority to accept Mrs. Kralman's retirement payments was revoked when the Bank knew that Mrs. Kralman had died.

There is no authority to support the proposition that the UCC applies *directly* to EFT's. The federal courts have uniformly concluded that the UCC does not apply to EFT's, except perhaps by analogy. *Shawmut*, 731 F. Supp. at 62; *Walker v. Texas Commerce Bank, N.A.*, 635 F. Supp. 678, 681 (S.D. Tex. 1986). *See Bradford Trust Co. v. Texas Am. Bank — Houston*, 790 F.2d 407, 409 (5th Cir. 1986); *Evra Corp. v. Swiss Bank Corp.*, 673 F.2d 951 (7th Cir.), *cert. denied*, 459 U.S. 1017 (1982); *Delbrueck & Co. v. Manufacturers Hanover Trust Co.*, 609 F.2d 1047 (2d Cir. 1979). The reasoning for rejecting the direct applicability of the UCC is sound. An EFT involves no signed negotiable instrument within the scope of UCC Article 3, and electronic transfers were surely not within the contemplation of those who drafted UCC Article 4 on bank collections. *Shawmut*, at 62.

Moreover, it is obvious that UCC Article 4 does not apply directly to EFT's, because the Washington Legislature in 1991 enacted UCC Article 4A, codified at RCW 62A.4A. This chapter is entitled "Funds Transfers" and deals exclusively with EFT's. As the drafters stated,

> There is no comprehensive body of law that defines the rights and obligations that arise from wire transfers. . . . The resolution of the many issues that are not covered by funds transfer system rules depends on contracts . . . or principles of law applicable to other payment mechanisms that might be applied by analogy. The result is a great deal of uncertainty.

UCC Art. 4A prefatory note, 2B U.L.A. 458 (1991).

Under RCW 62A.4-405, then, we hold that the Bank is not liable because this provision does not apply to EFT's.

Moreover, DRS bore the burden of implementing a system of verification. WAC 82-20-030(1) . Shifting this burden to the Bank under RCW 62A.4-405 would be totally unworkable:

Further, with the tremendous volume of items handled any rule which required banks to verify the continued life and competency of drawers would be completely unworkable.

Official Comment 2, RCWA 62A.4-405.

■ Although the UCC does not apply directly, DRS urges the court to apply UCC Article 4 by analogy, as other courts have done. The cases indicate that when dealing with EFT's, the courts have resorted to common law principles analogous to those codified in the UCC. In *Bradford Trust*, the court fell back on principles of fraud law. 790 F.2d at 409. In *Walker*, the court explicitly stated that since the UCC did not apply directly, it resorted to state common law principles of implied contract and negligence. 635 F. Supp. at 681-82. In *Shawmut*, the court resorted to negligence law. 731 F. Supp. at 62-63. We adopt a similar approach. In cases where the UCC does not apply, we will apply analogous principles of state law.

In this case, as DRS has pointed out, the analogous principles of Washington state law are the law of agency and the law of negligence. As already discussed, the Bank is not liable under the law of agency.

Nor is the Bank liable under negligence principles. DRS argues that the Bank was negligent in that it breached a common law duty of good faith and ordinary care in failing to inform it of Mrs. Kralman's death.

■ This argument fails because the law specifically imposes a duty on state agencies to establish controls to prevent the loss of state funds, WAC 82-20-030(1), and places the burden on the state entity issuing payment via EFT to provide banks with directions as to the amount to be deposited in a recipient's account. Former RCW 43.08.085. We are aware of no authority imposing a general duty on banks to report the death of customers to state agencies.

The Bank followed the directions it received from DRS; the money ended up in Mrs. Kralman's account as it always had. On the other hand, DRS failed to take steps to prevent the loss of over $20,000 in state funds. DRS breached its duty; the Bank did not.

Finally, DRS argues that under RCW 62A.4A-207(1), the Bank cannot accept a payment order on behalf of a nonexistent person; therefore, DRS is entitled to have its payments returned. Conceding that this statute was not enacted until 1991, DRS contends RCW 62A.4A-207(1) should apply retroactively because it is a remedial statute.

■ When a retroactive application is not expressly provided for in a statute, generally it should not be judicially implied. *Miebach v. Colasurdo*, 102 Wn.2d 170, 180, 685 P.2d 1074 (1984). Statutes are presumed to apply prospectively only. *Miebach*, at 180-81; *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981); *Pape v. Department of Labor & Indus.*, 43 Wn.2d 736, 741, 264 P.2d 241 (1953).

An exception to this presumption is recognized if the statute is remedial in nature, and retroactive application would further its remedial purpose. *Miebach*, at 180-81; *Macumber*, at 570. In general, a statutory provision is deemed remedial and applied retroactively when it relates to practice, procedure, or remedies, and does not affect a substantive or vested right. *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 463, 832 P.2d 1303 (1992); *Miebach*, at 181; *Pape*, at 741.

■ A "right" is a legal consequence deriving from certain facts, while a remedy is a procedure prescribed by law to enforce a right. *Hammack v. Monroe St. Lumber Co.*, 54 Wn.2d 224, 231, 339 P.2d 684 (1959); *Kittilson v. Ford*, 23 Wn. App. 402, 411, 595 P.2d 944 (1979), *aff'd*, 93 Wn.2d 223, 608 P.2d 264 (1980). A statute which provides a claimant with the right to proceed against persons previously outside the scope of the statute deals with a substantive right, and therefore applies prospectively only. *Kittilson*, at 411.

■ In this case, EFT's were outside the scope of the UCC until Article 4A was adopted in 1991, as discussed above. Because of the adoption of Article 4A, DRS is provided the

34

right to proceed against persons, namely beneficiary banks accepting payment orders on behalf of nonexistent persons, who were previously outside the scope of the statute. This statute has no express provision for retroactivity, it is not remedial in nature, and the presumption that it applies prospectively only has not been overcome. Thus, there is no liability under RCW 62A.4A-207(1).

We affirm.

THOMPSON, C.J., and MUNSON, J., concur.