[No. 18785-0-II.   Division Two.   October 18, 1996.]

EQUIPTO DIVISION AURORA EQUIPMENT COMPANY, *Respondent*, v. JERRY YARMOUTH, *Appellant*.

*Ross E. Taylor,* for appellant.

*Arnold B. Robbins* and *Breskin & Robbins,* for respondent.

MORGAN, J. — Equipto Division of Aurora Equipment Co. sued Jerry Yarmouth, claiming he was personally liable for the price of a work bench purchased in the name of his closely held corporation, J & R Interiors, Inc. Equipto then moved for summary judgment, which the trial court granted. Yarmouth appeals, but we affirm.

On May 23, 1990, the Secretary of State issued a certificate of incorporation to J & R Interiors, Inc. Yarmouth

"was shown as both the president and secretary of the corporation."[1] He also was its sole shareholder.[2]

J & R failed to file annual reports and pay annual fees. As a result, it was administratively dissolved by the Secretary of State, effective August 19, 1991.[3]

In November 1992, Yarmouth bought a work bench from Equipto.[4] He represented that he was acting as agent for J & R. The bench was delivered but not paid for. On May 31, 1993, more than $18,000 was still owed.

In March 1994, Equipto sued Yarmouth for the unpaid amount plus interest. Yarmouth did not deny that a debt was owed. He alleged, however, that the debt was owed only by J & R, and that Equipto was claiming more than the amount actually due.

In August 1994, Equipto moved for summary judgment. Yarmouth then learned, apparently for the first time, that J & R had been administratively dissolved three years earlier. According to his affidavit, he

immediately contacted the Secretary of State's office to confirm and/or reinstate J & R Interiors, Inc. [He] was told that because more than two years had passed, [he] would have to pay a new filing fee and file new Articles to reinstate J & R Interiors, Inc. as opposed to simply paying the past due filing fees.[5]

Yarmouth took the suggested steps on August 26, 1994. Within a short time, the Secretary of State issued a certificate of incorporation to a new corporation called J & R

---

[1]Br. of Appellant at 2.

[2]Br. of Appellant at 1.

[3]Notice of the pending dissolution was sent to the corporation's registered agent. He had moved, and no one had notified the Secretary of State.

[4]Yarmouth's major purchase, that of the work bench, was made in November 1992. According to the record, additional, relatively minor purchases may have been made during the first four months of 1993. For convenience, we refer only to the work bench, and only to a purchase date of November 1992. The other items make no difference to the issues on appeal.

[5]Clerk's Papers at 25.

Interiors, Inc. Throughout our discussion, "J & R" refers to the original J & R Interiors, Inc., unless otherwise indicated.

In September 1994, Yarmouth responded to Equipto's motion by asserting, in a responsive affidavit, that he had "reinstated J & R Interiors, Inc. by filing new Articles of Incorporation and paying the filing fee."[6] Additionally, he claimed that he was entitled to a credit in the amount of $1,624.58.

At a hearing on October 7, 1994, Equipto conceded a credit in the amount claimed by Yarmouth. The trial court then granted Equipto's motion for summary judgment in the total amount of $21,163.27.

On appeal, the core question is whether an agent, Yarmouth, who contracts with a third party, Equipto, in the name of a principal, J & R, can be held personally liable on the contract.[7] As Yarmouth correctly argues, this question is not addressed in the statutes. Hence, we look to the common law.

At common law, the liability of a person who purports to contract in the name of a principal can be governed by any one of several rules. First, a person who purports to contract in the name of a nonexistent or fictitious principal becomes liable on the contract, subject to exceptions not pertinent here.[8] The rule is based on "an inference that a person intends to make a present contract with an exist-

[6]Clerk's Papers at 25.

[7]Although Yarmouth seems to argue to the contrary, this question has nothing to do with piercing the corporate veil. Our discussion would be the same if Yarmouth had been acting as agent for an individual principal, rather than a corporate principal, assuming of course that each existed but lacked capacity to contract. The fact that Yarmouth happened to be president, secretary and sole stockholder of J & R is material only insofar as it indicates what Yarmouth knew or should have known about J & R's lack of capacity to contract (or, alternatively put, what a reasonable person standing in Yarmouth's shoes would have known about J & R's lack of capacity to contract).

[8]*Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 478-79, 670 P.2d 648 (1983); *White v. Dvorak*, 78 Wn. App. 105, 114-15, 896 P.2d 85 (1995); *American Seamount Corp. v. Science & Eng'g Assocs., Inc.*, 61 Wn. App. 793, 798-99, 812 P.2d 505, *review denied*, 117 Wn.2d 1024 (1991); 3 AM. JUR. 2D

ing person."[9] Therefore, "the parties intend that the person signing as agent should be a party, unless there is some indication to the contrary."[10]

■ Second, a person who purports to contract in the name of a principal that exists but lacks capacity to contract may be liable on the contract, but only if he or she (a) affirmatively misrepresents the principal's capacity, or (b) knows or should know of the principal's lack of capacity, and the other contracting party does not.

The liability of an agent who enters into a contract in the name of a fictitious or nonexistent principal is somewhat different from that of an agent who enters into a contract for a principal who is incompetent or under some legal disability, such as infancy, so that the contract may be later disaffirmed by or on behalf of such principal. An agent of one who lacks the capacity to contract is not necessarily liable on the contract, for an agent does not impliedly warrant that his principal has full contractual capacity any more than he impliedly warrants that his principal is solvent. If the agent misrepresents the capacity of his principal to contract, the agent is liable as for any other misrepresentation, whether the misrepresentation is tortious or innocent; but in the absence of misrepresentation, it must appear, in order to hold the agent personally liable, that the agent knew or had reason to know of his principal's lack of capacity, and it must

*Agency* § 306 at 810-11 (1986); RESTATEMENT (SECOND) OF AGENCY § 326 (1958). AM. JUR. § 306 states:

"As a general rule, one who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, renders himself personally liable on the contract so made. Moreover, a purported agent is not excused from personal liability on contracts executed by him on behalf of a nonexistent principal even though he acted in entire good faith, honestly believing that he was contracting for an existing principal."

RESTATEMENT (SECOND) OF AGENCY § 326 provides:

"Unless otherwise agreed, a person who, in dealing with another, purports to act as agent for a principal whom both know to be nonexistent or wholly incompetent becomes a party to such a contract."

[9]RESTATEMENT (SECOND) OF AGENCY § 326, cmt. a, at 78; *see also Goodman,* 100 Wn. 2d at 479 (quoting *White & Bollard, Inc. v. Goodenow,* 58 Wn.2d 180, 184, 361 P.2d 571 (1961)); *White,* 78 Wn. App. at 114.

[10]RESTATEMENT (SECOND) OF AGENCY § 326, cmt. a, at 78; *see also, White,* 78 Wn. App. at 114.

further appear that the other contracting party was in ignorance thereof.[11]

Third, a person who contracts in the name of a principal that exists and has capacity to contract is not liable on the contract so long as he or she fully or partially discloses the principal and has authority to contract.[12] The person

---

[11]3 AM. JUR. 2D § 307 at 812; *accord* RESTATEMENT (SECOND) OF AGENCY § 332; 16A WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 8117, *Dissolution and Winding Up* (rev. ed. 1989). RESTATEMENT (SECOND) OF AGENCY § 332 provides:

"An agent making a contract for a disclosed principal whose contracts are voidable because of lack of full capacity to contract, or for a principal who, although having capacity to contract generally, is incompetent to enter into the particular transaction, is not thereby liable to the other party. He does not become liable by reason of the failure to the principal to perform, unless he contracts or represents that the principal has capacity or unless he has reason to know of the principal's lack of *capacity and of the other party's ignorance thereof.*"

*Fletcher Cyclopedia* § 8117 at 367 states in part:

"Upon dissolution of a corporation, its officers and agents cease to be such and no longer have any power or authority to act for or bind it, except as they may· be authorized by statute to do such things as are required to adjust and wind up the corporation's business and affairs. . . .

"Authority conferred upon a corporate officer during the lifetime of the corporation cannot be invoked as a justification for his acts after its corporate death, where the acts are not designed and calculated to wind up the affairs of the company but to enlarge and extend its field of operations. If the officers continue to carry on the business of the *dissolved company, they may render themselves personally liable, unless the transactions are carried on in good faith and the corporation is afterwards reinstated.*"

[12]*Rho Co. v. Department of Revenue*, 113 Wn.2d 561, 587, 782 P.2d 986 (1989); *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin, & Fay, Inc.*, 71 Wn.2d 679, 686, 430 P.2d 600 (1967); *Davis v. Bafus*, 3 Wn. App. 164, 167, 473 P.2d 192 (1970); RESTATEMENT (SECOND) OF AGENCY §§ 320, 329. The theory underlying this liability is not always clear. Thus, one noted authority has said:

"A person who assumes to act as agent for another . . . and to make a contract with a third party thereby, impliedly, if not expressly, represents that he is in fact authorized by his principal to make the contract, and if it proves to be unauthorized, the agent will be liable to the third party. . . ." [quoting *Joseph Denunzio Fruit Co. v. Crane*, 79 F. Supp. 117 (S.D. Cal. 1948), *vacated*, 89 F. Supp. 962, *reinstated*, 188 F.2d 569 (9th Cir.), *cert. denied*, 342 U.S. 820 (1951).]

"While the decisions are in accord as to the existence of liability on the part of the agent, there is considerable divergence of opinion as to the nature of that liability. If, on a fair interpretation of the contract, it appears that the intent was to bind the principal only, the weight of authority holds that the agent is liable not on the contract but on an implied warranty of his authority; some courts hold the agent liable in tort for misrepresentation of authority."

may be liable, however, if one or more of these conditions is not met.[13]

To apply these rules here, we first ask whether J & R was in existence when, in November 1992, Yarmouth purchased the work bench. The Legislature has provided that a corporation shall continue in existence after an administrative dissolution.[14] Here, then, J & R was in existence in November 1992, notwithstanding its administrative dissolution in August 1991.

We next ask whether J & R had capacity to contract when, in November 1992, Yarmouth purchased the work bench. The Legislature has provided that even though an administratively dissolved corporation continues in existence, it "may not carry on any business except that necessary to wind up and liquidate its business and affairs . . . ."[15] Here, Yarmouth purchased the work bench as part of J & R's ongoing business, and not for the purpose

---

2 SAMUEL WILLISTON, A TREATISE ON THE LAW ON CONTRACTS § 282 at 326-27 (3d ed. 1959). Cases from numerous jurisdictions are cited in support.

[13]*Routh v. Wagner*, 53 Wn.2d 347, 349-50, 333 P.2d 674 (1959) (agent exceeded actual authority); *Department of Retirement Sys. v. Kralman*, 73 Wn. App. 25, 29, 867 P.2d 643 (1994); *Deers, Inc. v. DeRuyter*, 9 Wn. App. 240, 245, 511 P.2d 1379 (1973); *Glendale Realty, Inc. v. Johnson*, 6 Wn. App. 752, 755-56, 495 P.2d 1375 (1972); RESTATEMENT (SECOND) OF AGENCY §§ 329-330. RESTATEMENT (SECOND) OF AGENCY § 329 provides:

"A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized."

RESTATEMENT (SECOND) OF AGENCY § 330 provides:

"A person who tortiously misrepresents to another that he has authority to make a contract, conveyance, or representation on behalf of a principal whom he has no power to bind, is subject to liability to the other in an action of tort for loss caused by reliance upon such misrepresentation."

*Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 700, 756 P.2d 717 (1988); *Matsko v. Dally*, 49 Wn.2d 370, 374-75, 301 P.2d 1074 (1956); *Maxwell's Elec., Inc. v. Hegeman-Harris Co.*, 18 Wn. App. 358, 362, 567 P.2d 1149 (1977), *overruled in part on other grounds by Crown Controls*, 110 Wn.2d at 700; RESTATEMENT (SECOND) OF AGENCY § 322 (undisclosed principal).

[14]RCW 23B.14.210(3).

[15]RCW 23B.14.210(3).

of winding up its affairs.[16] Accordingly, J & R lacked capacity to form the contract in issue here.

We next ask whether J & R's capacity to contract was restored at any relevant time. According to the statute in effect between 1990 and 1995, an administratively dissolved corporation could be reinstated within two years after the effective date of the dissolution.[17] Reinstatement "relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred."[18] In other words, reinstatement cures, retroactively, any lack of capacity to contract due to administrative dissolution. In this case, however, J & R was not reinstated within the time allowed by law, and its lack of capacity to contract was never cured.

■ Because J & R was in existence but lacked capacity to contract, the second of our three common law rules applies. It is not contended that Yarmouth affirmatively misrepresented J & R's lack of capacity to contract, or that Equipto knew of J & R's lack of capacity to contract. Accordingly, the question becomes whether a reasonable person in Yarmouth's shoes would have known of J & R's lack of capacity to contract with Equipto. The answer is yes, as a matter of law, for reasonable minds could not differ. Although Yarmouth was dealing with Equipto in his role as contracting agent for J & R, he was, at the same time, the president, secretary and sole shareholder of J & R. In the latter roles, he had the right to know, and the means of knowing, whether J & R had filed its annual

---

[16]Yarmouth acknowledges this proposition in his brief. He states:

"In ignorance of the dissolution of the corporation, Mr. Yarmouth continued to operate it as before. In what was apparently November of 1992, he entered into a purchase agreement with Equipto . . . ." (Footnotes omitted.)

Br. of Appellant, at 3.

[17]Former RCW 23B.14.220(1); Laws of 1989, ch. 165, § 162, effective July 1, 1990.

[18]Former RCW 23B.14.220(3).

reports and paid its annual fees. More importantly, a reasonable person standing in his shoes would have known of J & R's administrative dissolution and of its consequent lack of capacity to contract. We conclude that Yarmouth should have known of J & R's lack of capacity to contract, that he failed to disclose such lack to Equipto, and that he is personally liable for the work bench.[19]

Affirmed.

SEINFELD, C.J., and TURNER, J., concur.

Review granted at 131 Wn.2d 1015 (1997).

---

[19]Yarmouth relies heavily on *Creditors Protective Assoc., Inc. v. Baksay*, 32 Or. App. 223, 226-27, 573 P.2d 766 (1978), a case construing an Oregon statute. The Oregon statute is different from ours and does not abrogate this state's adherence to the common law rules set forth above. Hence, *Baksay* has no effect here.