Argued and submitted March 9, reversed and remanded with instructions
September 1, 1993, reconsideration denied January 12, petition for review
denied February 8, 1994 (318 Or 351)

Dennis SIVERS,
*Respondent,*

*v.*

R & F CAPITAL CORP.,
*Defendant,*

*and*

Roy ROSE,
*Appellant.*

(CCV90-11-291; CA A75303)

858 P2d 895

Allan A. Fulsher, Portland, argued the cause for appellant. With him on the briefs was Fulsher & Weatherhead, P.C., Portland.

Lauren J. Paulson, Aloha, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

In this breach of contract action, defendant Roy Rose appeals a final judgment entered after the trial court denied his motion for a directed verdict and the jury returned a verdict against him. We reverse.

Plaintiff and defendant are both experienced businessmen. Defendant is a shareholder and director of R & F Capital Corporation (R & F). In 1990, plaintiff and R & F entered into a commercial leasing agreement involving a warehouse space in Milwaukie, Oregon. Plaintiff signed the lease in his individual capacity, and defendant signed as "chairman" on behalf of R & F. The written agreement shows that the lease was "executed"[1] on January 12, 1990, and was to commence on January 17, 1990. The parties stipulated that R & F was incorporated on February 9, 1990.

In November, 1990, plaintiff sued R & F and defendant, alleging that R & F had breached the lease by failing to pay a number of rental installments for the warehouse space it occupied. The claim against defendant was that he was personally liable under ORS 60.054.[2] During trial defendant moved for a directed verdict. Defendant assigns as error the trial court's denial of that motion.

■ In reviewing a denial of the motion for a directed verdict, we consider the evidence in the light most favorable to the party with the judgment and will not reverse the denial unless we can affirmatively say that there is no evidence from which the jury could have found the necessary facts. *Petty v. Rogue Federal Credit Union*, 106 Or App 538, 541, 809 P2d 121, *rev den* 311 Or 432 (1991).

ORS 60.054 provides:

"All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation, are jointly and severally liable for liabilities created while so acting."

---

[1] Plaintiff testified that the date of execution meant the date on which the lease was signed.

[2] Plaintiff's initial theory for imposition of personal liability was that R & F was defendant's "alter ego." Defendant moved to dismiss that claim and the trial court granted the motion. Plaintiff did not below, and does not on appeal, challenge that ruling. *See Amfac Foods, Inc. v. Int'l Systems & Controls Corp.*, 294 Or 94, 654 P2d 1092 (1982).

This provision was adopted in 1987 as part of SB 303, and is virtually identical to section 2.04 of the Revised Model Business Corporation Act (1984) (RMBCA).[3] Section 2.04 is a codification of the judicial exceptions to the general rule that those who prematurely act as, or on behalf of, a corporation are personally liable on all transactions entered into or liabilities incurred before incorporation. *MBCA Annot.* § 2.04, at 130. As written, section 2.04 "impose[s] liability only on persons who act as or on behalf of corporations 'knowing' that no corporation exists." *MBCA Annot.* § 2.04, at 133; *see also Micciche v. Billings*, 727 P2d 367, 370 (Colo 1986).

In proposing the adoption of section 2.04 of RMBCA in Oregon, the Task Force of the Oregon State Bar Business Law Section, which authored SB 303, wrote:

"The Bill adopts RMBCA Section 2.04, deleting only the reference to incorporation under 'this Act,' as being too limiting. The Bill treats preincorporation liability in a manner consistent with the Model Act provision, although somewhat differently from [*former*] ORS § 57.793. It is those who purport to act on behalf of the corporation "knowing there was no incorporation" who are subject to liability under the Bill. Existing law subjects all those who 'assume to act as a corporation without the authority of a certificate of incorporation' to liability. *The Bill protects participants who act honestly but subject to the mistaken belief that the articles have been filed.* This section is consistent with the Revised Uniform Limited Partnership Act (1976), which provides that limited partners who contribute capital to a partnership with the mistaken belief that a limited partnership certificate has been filed are protected from liability. This appears to be consistent with Oregon case law concerning de facto corporations. *See Sherwood & Roberts v. Alexander*, 269 Or 389, [525 P2d 135] (1974)." Oregon State Bar Business Law Section, Model Business Corporation Act Task Force, *Report on Oregon Revised Model Business Corporation Act* (March 24, 1987), § 18, p 7. (Emphasis supplied.)

*See also Comments on Oregon Revised Model Business Corporation Act* (March 24, 1987), § 18, p 6.

---

[3] As of March 1, 1993, about 15 states have adopted provisions either identical to RMBCA section 2.04, or with minor modifications. *See Model Business Corporation Act Annotated (MBCA Annot.)*, § 2.04, at 137 (3d Ed 1985.

■■   The wording of ORS 60.054 and the drafters' comments clearly indicate that the test for imposition of personal liability is one of actual knowledge. Further, it is plaintiff's burden to show that defendant has the requisite actual knowledge.

Plaintiff argues that there are facts from which the jury could find that defendant knew that R & F was not incorporated when he signed the lease. Under the circumstances of this case, we disagree. In his case-in-chief, plaintiff testified that he hired a commercial leasing agent in the negotiations of the lease in question. He personally had never met or spoken with defendant before. Plaintiff's employees prepared the lease, and typed in additional information on it. Plaintiff remembered that he signed the lease about January 12, 1990. At the time he signed, he understood that he was dealing with R & F, an Oregon corporation, not with defendant personally. He knew that R & F was a "start-up," but made no independent inquiries into its status, because he thought that R & F was then incorporated. It was not until May or June of 1990 when he first learned that R & F was not yet incorporated on January 12, 1990.

Plaintiff also called defendant as an adverse witness in his case-in-chief. Defendant testified that he was a businessman who created financing packages to buy companies. He had a controlling interest in two other companies. His highest net worth at one point was $56 million. He had been involved in setting up many corporations. However, he had no specific experience in incorporating, because his attorneys handled those aspects of his business. For example, he did not know when a corporation formally began its existence, although he understood that documents needed to be filed with the state and a copy would be returned upon incorporation.

With respect to R & F, defendant had no participation in its daily operation, other than attending board meetings and signing documents as "chairman." He entrusted Flaherty, an R & F director, with those daily duties. Defendant did not read the articles of incorporation of R & F until he was sued. He recalled that that document was given to him and was filed in December, 1989. He remembered that he signed the lease in late February or early March of 1990,

although he had nothing to contradict the dates as shown on the lease.

After his motion for a directed verdict was denied, defendant and Alderman, another R & F director, testified in the defense. Their testimony was consistent with defendant's testimony in plaintiff's case-in-chief. Specifically, they testified that defendant signed the lease in late February or early March of 1990, after R & F had occupied the premises for some time, and that Flaherty was entrusted to incorporate R & F in December of 1989, but failed to do that. They both believed that R & F was incorporated in December of 1989. Defendant also testified that he started investing based on that belief, and that he would not have signed any document on behalf of a corporation if he had known that it was not incorporated.

■ Plaintiff does not argue that there is direct evidence that defendant knew that the corporation had not been formed when he signed the lease. To support his argument that there was circumstantial evidence, he points to defendant's vast experience as a businessman, his failure to read the articles of incorporation and his complete lack of responsibility for filing necessary corporate documents with the Secretary of State. His reliance on those facts is misplaced. At most, they show that defendant should have inquired into R & F's status and should have known that the corporation was not formed. They do not rise to the level of actual knowledge required under ORS 60.054. Plaintiff would have us construe ORS 60.054 as requiring a test of constructive knowledge. However, had the legislature intended to adopt such a test, it would not have used the unmodified term "knowing." *Cf.* ORS 59.115(3).[4]

■ A more fundamental argument plaintiff raises is that, although defendant testified that he believed that R & F was incorporated at the time he signed the lease, the jury could disbelieve him and affirmatively find that he had the requisite actual knowledge. That argument goes too far.

---

[4] ORS 59.115(3) provides that a nonseller is jointly and severally liable for certain violations of the Oregon Securities law,

"unless the nonseller sustains the burden of proof that the nonseller *did not know, and, in the exercise of reasonable care, could not have known,* of the existence of the facts on which the liability is based." (Emphasis supplied.)

Although a jury may disbelieve a witness based on demeanor, bias, motives, interest or inconsistent statements, there must be evidence, direct or circumstantial, from which the jury can *reasonably* find that a defendant possesses the requisite knowledge. In this case, defendant maintained throughout trial that he honestly believed that R & F was incorporated when he signed the lease. Plaintiff produced nothing to contradict that. The trial court should have granted defendant's motion for a directed verdict.

Because of our disposition on the second assignment of error, we need not address defendant's other assignments.

Reversed and remanded with instructions to enter judgment for defendant Rose.