Argued and submitted March 7, reversed and remanded in part; otherwise affirmed June 26, 1996

Daniel J. CONNER
and Paula J. Conner,
*Appellants,*

*v.*

Helen LUCAS
by and through the Estate of Helen Lucas,
Estate of Barnie Lucas and M. Burke Rice,
*Respondents.*

Helen LUCAS
and Estate of Barnie Lucas,
*Counterclaim Plaintiffs,*

*v.*

Daniel J. CONNER
and Paula J. Conner,
*Counterclaim Defendants.*

(92-2045; CA A83675)

920 P2d 171

Jacob Tanzer argued the cause for appellants. With him on the briefs was Ball, Janik & Novak.

David J. Sweeney argued the cause for respondents. On the brief were Paul G. Dodds and Brownstein, Rask, Arenz, Sweeney, Kerr & Grim.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., concurring.

### EDMONDS, J.

Plaintiffs appeal from a judgment quieting title to a disputed area of real property in respondents and extinguishing an easement for a roadway across the area. We affirm in part and reverse in part.

The disputed area is on Mt. Neahkahnie in Tillamook County. Respondents Barney and Helen Lucas (Lucases) owned a large area on the mountain, including the disputed area. Over the years, they divided their property into separate parcels and sold the parcels to various individuals. In 1953, Lucases sold one of the parcels to Purcells. The deed described the land conveyed by metes and bounds and did not include the disputed area in the description. However, the deed granted Purcells a roadway over the disputed area, describing by metes and bounds the disputed area over which the easement crossed. The deed also granted Purcells the right to use an existing easement over a parcel that Lucases had sold earlier to another couple. That easement connects the disputed area with Highway 101, according to a survey prepared for Mr. Lucas around the time of the Lucas-Purcell conveyance. The survey shows two undeveloped roads running through the disputed area—one connecting the existing easement to Purcells' parcel, and one connecting the existing easement to property retained by Lucases.

After the sale, the county tax assessor designated the property conveyed to Purcells as tax lot 500 and also included the disputed area in tax lot 500. From 1953 to 1992, Purcells paid property taxes for tax lot 500. In 1984, Mr. Purcell logged part of the property, including a portion of the disputed area. In 1988, he asked a local surveyor to prepare a tentative plan for the subdivision of their property. The surveyor included the disputed area in his plan, and although Purcell did not intend to develop the area himself, he retained the plan as something he "could show to a prospective buyer." In 1990, Lucases conveyed all of their property to trusts, but those conveyances did not include the disputed area. Defendant M. Burke Rice is the appointed trustee for the Helen Lucas trust. As of 1992, Purcells' property and the disputed area remained undeveloped. Meanwhile, Lucases

had not conducted any activities on the disputed area. In fact, as a result of other sales, the property had become land-locked and did not adjoin any of their property.

Plaintiffs, who owned property adjoining the northern border of the Purcell property, offered to buy tax lot 500 from Mrs. Purcell in 1992. By that time, Mr. Purcell was very ill, and Mr. Lucas had died. Mrs. Purcell eventually accepted the offer, and an earnest money agreement was drafted that described the property to be conveyed as tax lot 500. Relying on the tax assessor's map, plaintiffs also attached to the earnest money agreement a drawing of "tax parcel 500" that included the disputed area. Purcell signed the agreement, and a title search was conducted. The title company refused to insure the disputed area after it discovered that the Lucas-Purcell deed had not conveyed the disputed area. Plaintiffs sought to obtain a deed to the disputed area and contacted Lucases' son, James, who responded that he did not have authority to convey the property to plaintiffs. Sometime after that conversation, Helen Lucas conveyed the disputed area by bargain and sale deed to her trust. Meanwhile, plaintiffs closed the sale with Mrs. Purcell. Purcell made two separate conveyances to plaintiffs—one by warranty deed that used the property and the easement descriptions from the Lucas-Purcell deed, and one by bargain and sale deed that conveyed the disputed area to plaintiffs.

Plaintiffs then filed this action against defendants, seeking to reform the Lucas-Purcell deed to include the disputed area. Alternatively, they claim that Purcells obtained title to the disputed area by adverse possession. Accordingly, they seek remedies of ejectment and to quiet title in themselves. As alternative relief, they seek a declaration that they have an easement across the disputed area to the remainder of the property that they purchased from Purcells. Defendants counterclaimed for damages for trespass[1] including punitive damages. They also sought to quiet title to the disputed area in themselves and a declaration that the easement had been abandoned. All of the claims were tried to a

---

[1] After the dispute between the parties began, plaintiffs entered the disputed area, cut down alder saplings and brush that had grown in the area, and planted red cedars and shore pine.

jury.[2] At the close of plaintiffs' case, the trial court granted an involuntary dismissal of plaintiffs' reformation claim under ORCP 54 B(2), and after the close of all the evidence, the jury returned verdicts for defendants on plaintiffs' adverse possession claim and on defendants' other claims. Plaintiffs appeal.

■ Plaintiffs assign error to the trial court's granting defendants' motion for involuntary dismissal of their reformation claim. We treat the motion as one for a directed verdict under ORCP 60.[3] Plaintiffs argue that the trial court erred when it determined that there was no evidence from which a jury could find in favor of plaintiffs. In order to be entitled to reformation of a deed, a plaintiff must show by clear and convincing evidence that there existed an antecedent agreement between the parties and that because of a *mutual mistake of material fact*, the agreement as written does not express the intentions of the parties. *Ellison v. Watson*, 53 Or App 923, 928, 633 P2d 840, *rev den* 292 Or 109 (1981). Thus, it is our function to determine whether, after "viewing the evidence in the light most favorable to plaintiffs, the jury could have found clear and convincing evidence of [an antecedent agreement]." *Onita Pacific Corp. v. Trustees of Bronson*, 122 Or App 452, 457, 858 P2d 453, *rev den* 318 Or 170 (1993). To be "clear and convincing,"

"the evidence must be free from confusion, fully intelligible [and] distinct and establish to the jury that [the deed does not accurately reflect the antecedent agreement of the parties]. To be both clear and convincing, the truth of the facts asserted must be highly probable." *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 407, 737 P2d 595 (1987).

■ Plaintiffs argue that a reasonable juror could infer from the parties' post-conveyance conduct that Lucases

---

[2] It appears that the parties consented to all claims, including the equitable claims, being tried to a jury, pursuant to ORCP 51 D. ORCP 51 D provides, in part:

"In all actions not triable by right to a jury, the court * * * may, with the consent of all parties, order a trial to a jury whose verdict shall have the same effect as if trial to a jury had been a matter of right."

[3] Defendants brought their motion under ORCP 54 B(2), which provides for involuntary dismissal when an action is tried by the court without a jury. Because the issues were tried to a jury, defendants should have made the motion under ORCP 60.

intended to include the disputed parcel in the conveyance to Purcells. They point to evidence that Purcells instead of Lucases paid the taxes on the disputed area, that Lucases did not exercise any possessory rights in the property, that Lucases subsequently deeded all of the property to their trusts except the disputed area, and that, approximately 30 years after Purcells bought the property, Purcells logged part of the disputed area.

Although there is some evidence that Purcells believed that they owned the disputed area, no reasonable trier of fact could conclude that Lucases' intent to convey the disputed area to Purcells in 1953 was clear and convincing. The Lucas-Purcell deed clearly conveys only an easement to Purcells across the disputed parcel. At that time, the Lucases retained a parcel of land south of the disputed parcel that would have had no access to the easement leading to Highway 101 without their ownership of or reservation of rights in the disputed parcel. It appears from the circumstances surrounding the 1953 conveyance that Lucases intended to do exactly as the deed described and retain ownership in the disputed parcel in order to provide their remaining parcel with access to the easement leading to highway 101.

Furthermore, the fact that Lucases did not assert any possessory interests in the disputed area from 1953 to 1992 must be considered in light of the fact that Purcells' property and the disputed area remained undeveloped during that time. Also, the fact that Lucases did not pay taxes on the property must be considered in light of the fact that the tax assessor, and not Lucases, designated the disputed area as part of tax lot 500. Finally, although Lucases did not initially convey the disputed area to their trusts, the conveyances to the trust occurred 37 years after the conveyance to Purcells. Under the circumstances, it is equally inferable that the omission of the conveyance of the disputed area to the trusts was the result of inadvertence as it is that Lucases intended to include the disputed area in the description of the 1953 deed. We therefore conclude that there is not sufficient evidence from which a reasonable juror could conclude that it is "highly probable" that Lucases intended to convey ownership of the disputed area to Purcells. Consequently, the trial

court did not err in dismissing plaintiffs' claim for reformation.[4]

Plaintiffs next assign error to the denial of their motion for a directed verdict under ORCP 60 on defendants' counterclaim that Purcells had abandoned the easement specified in the 1953 deed. We review that ruling in the light of the evidence most favorable to defendants and will not reverse unless we can say that there is no evidence from which the jury could have found the facts necessary for defendants to prevail. *Sivers v. R & F Capital Corp.*, 123 Or App 35, 37, 858 P2d 895 (1993), *rev den* 318 Or 351 (1994). Plaintiffs argue that the only evidence offered by defendants in support of their claim was that Purcells never used the easement and that that evidence is legally insufficient to support their claim. In *Abbott v. Thompson*, 56 Or App 311, 641 P2d 652, *rev den* 293 Or 103 (1982), we explained that nonuse alone does not constitute the abandonment of an easement. A party claiming abandonment must show in addition to nonuse "either [a] verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use." *Id.* at 316. In this case, nonuse was established. It is uncontroverted that neither plaintiffs nor Purcells used a roadway across the disputed area. As to the element of intent, defendants argue that Mr. Purcell "acted" inconsistently with any intent to retain the easement when he hired the surveyor to draw a tentative map for the future subdivision of the property and the surveyor's plan did not show the easement as a means of access to and from the proposed subdivision. However, there is no evidence that Purcell told the surveyor what access roads he envisioned would serve the subdivision or that he adopted the surveyor's plan as an expression of his own intentions for the development of his property. In sum, there is no evidence of a nexus between the surveyor's map and Purcells' expression of their intentions about the alleged abandonment of the easement.

Also, defendants argue that Mrs. Purcell's testimony at trial is evidence that Purcells intentionally abandoned their easement. On direct examination, she testified that she

---

[4] Plaintiffs do not assign error to any rulings regarding the adverse possession claim.

and her husband had no property rights in the disputed parcel; she also said that they never intended to give up any property rights that they had in the property that they had acquired from the Lucases. On cross-examination, Mrs. Purcell testified that she had not intended to give plaintiffs the right to use the disputed area as access to the property that they had purchased from her "because it wasn't mine to give." However, according to the two deeds she executed to plaintiffs, she conveyed either a roadway easement over the disputed area or the disputed area to plaintiffs. Whatever import Mrs. Purcell's testimony has on plaintiffs' claim of title to the disputed area, it is not referable to any conduct by Purcells that demonstrates an informed and deliberate relinquishment of easement rights that were contained in the 1953 deed from Lucas to Purcell. In sum, there is no evidence from which an intent to abandon the roadway easement can reasonably be inferred. The trial court erred in denying plaintiffs' motion for a directed verdict on the counterclaim that sought a declaration that the roadway easement had been abandoned.

■■  In their third assignment of error, plaintiffs argue that if judgment is reversed on either of their first two assignments, the judgment for trespass must also be reversed. They argue that there was no evidence of any damage to the value of the disputed area that resulted from their conduct but concede that that argument was not preserved below. They conclude that it was plain error for the trial court to enter judgment on a verdict for punitive damages in the absence of any award by the jury of compensatory damages. ORAP 5.45(2). Generally, punitive damages are not recoverable in the absence of proof of actual damages. *Crouter v. United Adjusters, Inc.*, 259 Or 348, 364, 485 P2d 1208 (1971). However, in an action for intentional trespass to land, the law presumes that a plaintiff has been damaged without the necessity of proof of actual damages. *Rhodes v. Harwood*, 273 Or 903, 926, 544 P2d 147 (1975). Therefore, the trial court did not err in entering a judgment for punitive damages.

■  The remaining question is whether the judgment for trespass must be vacated because plaintiffs have a roadway easement across the disputed area. There is no evidence in the record that plaintiffs' trespass related to the use of the

easement. Rather, the planting of trees in the disputed area is inconsistent with the use of the property for roadway purposes. Accordingly, we decline plaintiffs' invitation to vacate the judgment for trespass damages.

Reversed and remanded for entry of judgment in favor of plaintiffs on defendants' counterclaim seeking a declaration of abandonment of easement; otherwise affirmed.

**ARMSTRONG, J.,** concurring.

I concur in the decision in this case but write separately to explain why I am persuaded that there was no evidence on which to find in favor of plaintiffs on the reformation claim. In order to prevail on that claim, plaintiffs had to establish the content of the specific agreement to which the prior agreement was to be reformed. Even if the evidence could support a finding that Lucases agreed to convey a fee interest in the disputed parcel to Purcells, there is no way to resolve whether that interest was an unencumbered interest.

As noted by the majority, 141 Or App at 537, Lucases owned an adjoining parcel to the south of the disputed parcel. An existing roadway over the disputed parcel provided access from the adjoining parcel to Highway 101. If Lucases had agreed to convey the fee to the disputed parcel to Purcells, they could well have intended to reserve an easement over that parcel that mirrored the easement in favor of Purcells in the original deed. On this record, however, there is no way to resolve whether such an easement was reserved in the agreement that plaintiffs sought to prove. Consequently, the jury would have to speculate whether the agreement conveyed an unencumbered fee interest to Purcells, which the jury is not permitted to do. For that reason, I agree that the trial court properly granted a directed verdict on plaintiffs' reformation claim because the record does not contain evidence on which the jury could determine the content of the purported agreement.