[Nos. 64863-8; 65053-5. En Banc.]

Argued September 23, 1997. Decided February 5, 1998.

EQUIPTO DIVISION AURORA EQUIPMENT COMPANY, *Respondent*, v. JERRY YARMOUTH, *Petitioner.*

DRAPER SHADE & SCREEN COMPANY, INC., *Respondent*, v. JERRY YARMOUTH, ET AL., *Appellants*.

358

*Ross E. Taylor*, for petitioner and appellants.
*Breskin & Robbins*, by *Arnold B. Robbins*; and *Joe M. Quaintance*, for respondents.

DOLLIVER, J. — Petitioner Jerry Yarmouth seeks review of two summary judgments against him, both of which find him personally liable for debts incurred by Yarmouth in the name of J & R Interiors, Inc., a corporation which was

dissolved at the time the contracts were made. We reverse both judgments and remand for further fact-finding.

In 1990 a certificate of incorporation was issued to J & R Interiors, Inc. (hereinafter J & R). Jerry Yarmouth was the sole shareholder, director, and officer of the corporation. Thomas Farrow was the registered agent of the corporation, and the corporation's registered office was Farrow's law office. In 1991 Thomas Farrow closed his firm and took a position on the Pierce County District Court bench.

Some time in 1991, the Secretary of State mailed notice of the due date for payment of J & R's annual license fee and filing of the annual report. Yarmouth alleges the 1991 notice was sent to J & R's registered office—Farrow's old business address—and was returned as undeliverable to the State. The record before this court contains no documentation supporting Yarmouth's claim, but Respondents did not contest the allegation.

As a result of J & R's not receiving the notice, Yarmouth failed to pay J & R's annual fee and file the annual report. On August 19, 1991, in light of the unpaid fee and missing annual report, the Secretary of State administratively dissolved J & R. Yarmouth claims that notice of the dissolution was sent to Farrow's old address and returned as undeliverable; thus, Yarmouth claims he never received notice of the dissolution. Yarmouth, purportedly with the good faith belief that the corporation was intact, operated J & R as an ongoing business after its dissolution.

In fall 1992 J & R purchased a workbench from Equipto Division Aurora Equipment (Equipto). The bill for the workbench, totaling nearly $20,000, became outstanding on December 20, 1992. J & R failed to pay the bill, so Equipto brought this action in February 1994 against Yarmouth personally. Yarmouth filed an answer in March 1994 claiming Equipto's cause of action was solely against the corporation, J & R. Equipto then filed a motion for summary judgment, to which it attached a sealed certificate from the Secretary of State showing J & R had been dissolved in 1991.

Yarmouth claims his first notice of J & R's administrative dissolution was when Equipto served its summary judgment motion, with the attached certificate of dissolution, some time between August 24 and August 26, 1994. Yarmouth immediately contacted the Secretary of State and was told he could not reincorporate the "old" J & R because more than two years had passed since dissolution. Yarmouth was allowed to file incorporation papers to start a brand new corporation. Yarmouth filed the new papers on August 26, 1994—just days after he first learned of the dissolution. The "new" J & R has the same name, the same Washington business identification number, and Yarmouth also claims the new corporation has the same federal tax identification number as the old. Yarmouth claims Equipto's cause of action properly lies against J & R, and not Yarmouth personally. Even though the "new" J & R is legally independent from the "old" J & R, Yarmouth concedes the new corporation is responsible for the old corporation's debts.

The trial court granted summary judgment to Equipto, against Yarmouth personally, for the outstanding debt. Yarmouth appealed, and the Court of Appeals affirmed. *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 83 Wn. App. 817, 924 P.2d 405 (1996) (hereinafter *Equipto*). This court granted the petition for review. *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 131 Wn.2d 1015 (1997).

The particular facts of the consolidated case, *Draper Shade & Screen Co. v. Yarmouth*, present the identical issue. Draper Shade sued Yarmouth personally over outstanding bills for merchandise ordered and received by J & R between October 1992 and December 1993—again, while the corporation had been administratively dissolved. The trial court granted summary judgment to Draper Shade and found Yarmouth liable for over $16,000. Yarmouth successfully motioned to have the appeal from summary judgment transferred and consolidated with *Equipto*.

Since these consolidated cases both stem from summary judgments granted to Respondents, this court must view

the facts most favorably to Yarmouth. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Review of the question of law is de novo. *Id.*

For an excellent and comprehensive survey of the numerous ways states have dealt with the exact issue presented by this case, *see* Thomas G. Fischer, Annotation, *Liability of Shareholders, Directors, and Officers Where Corporate Business Is Continued After Its Dissolution*, 72 A.L.R.4TH 419 (1989). Many states base their corporate statutes on the Model Business Corporation Act (MBCA). *See* ROBERT J. McGAUGHEY, WASHINGTON CORPORATE LAW HANDBOOK 10-11 (1993) (McGaughey). Washington's former Title 23A RCW, enacted in 1965, adopted most of the Model Act. *Id.* Even though many states follow the MBCA, the case law from those jurisdictions varies greatly on the issue of post-dissolution liability, and there is little consistency in the analysis used to resolve the issue, or the results reached.

Further complicating research and analysis of the issue, the MBCA was significantly revised in 1984, when the American Bar Association adopted the Revised Model Business Corporation Act (RMBCA). Washington State completely revised its corporate act in 1989, repealing RCW 23A, and enacting RCW 23B, which is based primarily on the 1984 RMBCA. LAWS OF 1989, ch. 165; McGaughey at 11. Most of the case law from all state jurisdictions, on the issue of postdissolution liability, relies on the old version of the MBCA. Few Washington cases have discussed the sections of RCW 23B which are applicable to this case.

■ Our analysis must begin with a brief overview of administrative dissolution under RCW 23B.14.200-.220. No party contests that J & R was properly incorporated. Once incorporated, however, a corporation has yearly responsibilities to maintain its corporate status. A domestic corporation must pay an annual $50 license fee, RCW 23B.01.530, and it must file an annual report with the Secretary of State. RCW 23B.16.220. Yarmouth does not dispute J & R failed to file its annual report or pay the $50 annual license fee in 1991, 1992, and 1993.

A corporation's failure to pay its annual fee or file its annual report are grounds for administrative dissolution of the corporation by the Secretary of State. RCW 23B.14.200. Once a cause for dissolution arises, the corporation is notified and has 60 days to correct the condition. RCW 23B.14.210(1), (2). If the corporation fails to correct the condition, the Secretary of State will administratively dissolve the corporation. RCW 23B.14.210(2). Once dissolved, the corporation "continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under RCW 23B.14.050 and notify claimants under RCW 23B.14.060." RCW 23B.14.210(3).

The statutory scheme allows for the reinstatement of an administratively dissolved corporation. Under former RCW 23B.14.220(1), in effect in 1994, a corporation could apply for reinstatement within two years of dissolution. If the Secretary of State found that the grounds for dissolution had been corrected, the Secretary of State would reinstate the corporation. RCW 23B.14.220(2). Reinstatement related back to the effective date of the original dissolution, and the corporation resumed its business as if the dissolution had never occurred. RCW 23B.14.220(3). J & R was administratively dissolved in August 1991, and this two-year reinstatement window closed in 1993. When Yarmouth attempted to reinstate J & R in 1994, the Secretary of State required Yarmouth to form a new corporation because the two-year reinstatement period had passed.

One very interesting issue presented by RCW 23B.14-.220(1) has not been mentioned by any of the parties or the Court of Appeals. In 1995 the Legislature amended the subsection and extended the reinstatement window to five years. LAWS OF 1995, ch. 47, § 2. The Final Legislative Report explains the reason for changing the time limit: "Additionally, concern exists that the two-year reinstatement period is too short, producing a number of negative consequences for unintended dissolutions." FINAL LEGISLATIVE REPORT, 54th Leg. 210 (1995). Had J & R applied for

reinstatement in the summer of 1995, after this amendment became effective, his reinstatement application would have fallen within the five-year window. One could argue the amendment is remedial, such that it should be applied retroactively, thereby affording Yarmouth relief. *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 462-63, 832 P.2d 1303 (1992) (a remedial amendment is applied retroactively when it relates to practice, procedure or remedies). No party has advanced this argument, and it is not critical to our resolution of the matter, so further discussion on this particular point is unwarranted.

In *Equipto*, the Court of Appeals quotes RCW 23B.14.210(3) as limiting a dissolved corporation's activities to those necessary to wind up business. *Equipto*, 83 Wn. App. at 823 & n.15. Since Yarmouth continued to conduct "ongoing" business after J & R was dissolved in August 1991, the Court of Appeals held his acts were ultra vires, and the corporation did not have the capacity to form the contract which gave rise to the debt. *Equipto*, 83 Wn. App. at 823-24. The court claimed no statutes addressed the question of Yarmouth's liability, so the court's analysis departed from the Washington Business Corporation Act (WBCA). Instead, the court applied the following common-law agency principle:

> [A] person who purports to contract in the name of a principal that exists but lacks capacity to contract may be liable on the contract, but only if he or she . . . (b) knows or should know of the principal's lack of capacity, and the other contracting party does not.

*Equipto*, 83 Wn. App. at 821. The court found Yarmouth should have known J & R had been dissolved and should have known J & R could not carry on business after dissolution. Since he should have known of the principal's lack of capacity, the court found Yarmouth personally liable. *Equipto*, 83 Wn. App. at 824-25.

We decline to adopt the Court of Appeals' application of agency law to the issue of postdissolution liability. While

the chapter on dissolution, RCW 23B.14, does not specifically address the question of a corporate officer's liability for conducting business as usual after the corporation has been dissolved, the WBCA does contain a general provision regarding personal liability. *See* RCW 23B.02.040. The main question presented in Yarmouth's petition for review is whether RCW 23B.02.040 resolves the legal question in this case, thereby precluding application of a common-law agency analysis. *See Steve's Equip. Serv., Inc. v. Riebrandt*, 121 Ill. App. 3d 66, 459 N.E.2d 21, 24 (1984) (application of common-law agency principles is precluded by a statute which imposes liability on persons exercising corporate powers without authority).

Is Yarmouth's liability governed by RCW 23B.02.040?

RCW 23B.02.040 states:

> All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this title, are jointly and severally liable for liabilities created while so acting except for any liability to any person who also knew that there was no incorporation.

As an initial matter, we decline to limit application of RCW 23B.02.040 exclusively to preincorporation situations. While RCW 23B.02.040 falls under the chapter entitled "Incorporation," and the title of the statute itself is "Liability for preincorporation transactions[,]" the section headings used in the title "do not constitute any part of the law." RCW 23B.900.050. Our analysis must turn on the language within the statute.

The first phrase of the statute, "[a]ll persons purporting to act as or on behalf of a corporation," is straightforward. When Yarmouth conducted business with Equipto and Draper Shade, he purported to act as or for J & R, a corporation. The third phrase, "are jointly and severally liable for liabilities created while so acting," also applies to Yarmouth. The exception contained in the statute does not apply to the facts of this case—no party has argued

Equipto or Draper Shade knew J & R was dissolved when the contracts were made.

The second phrase of the statute, "knowing there was no incorporation under this title," presents the greatest difficulty in this analysis. The first, and most obvious, scenario addressed by the phrase is a situation where one acts as a corporation before the corporation has been formed, or before "incorporation." This kind of liability usually involves a promoter's liability for preincorporation contracts. *See, e.g., Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 478, 670 P.2d 648 (1983).

Yarmouth urges us to read the second phrase to encompass the situation where one acts after a corporation has been dissolved. This argument makes some sense. While it is obvious incorporation cannot exist prior to the filing of corporate papers, there must also be some point at the end of a corporation's existence where there ceases to be incorporation. One can act as a corporation, while knowing there was no incorporation, both before the corporation has come into existence *and* after the corporation ceases to exist. The difficulty with this argument is that a corporation's existence does continue after dissolution, albeit in a very narrow, restricted sense.

A dissolved corporation continues its existence so as to wind up business affairs, but it is prohibited from conducting any other business. RCW 23B.14.210(3). Yarmouth would have us apply the phrase "knowing there was no incorporation" to the point in time where a corporation is administratively dissolved. There is no definition of the term "incorporation" in RCW 23B. One could argue a corporation's "incorporation" conditionally ends at the time of dissolution, since the corporate existence continues for the sole purpose of winding up the business—for all other purposes the corporate form is meaningless. The dissolution is conditional because the corporation can be reinstated within five years (formerly two years) of dissolution, and reinstatement dates back to the date of dissolution as if the administrative dissolution had never occurred.

RCW 23B.14.220(3). Under this broad interpretation urged by Yarmouth, the RCW 23B.02.040 phrase, "knowing there was no incorporation," attaches upon the date of dissolution: All knowing, unauthorized acts after dissolution potentially incur personal liability. Yarmouth's interpretation of RCW 23B.02.040 is supported by an analysis of case law and legislative history.

The single Washington state case that has discussed the applicability of RCW 23B.02.040 to postdissolution situations supports Yarmouth's position. *See White v. Dvorak*, 78 Wn. App. 105, 896 P.2d 85 (1995). In *White*, the plaintiff, in his individual capacity, sued to enforce a contract which had been made between plaintiff's corporation and defendant, but plaintiff's corporation was dissolved at the time the contract was made. When discussing whether plaintiff personally had a right to seek enforcement of the contract made by a dissolved corporation, the court stated that "[a]n individual who purports to act as a corporation is liable as a promisor on the contract[.]" *White*, 78 Wn. App. at 111 (citing RCW 23B.02.040). The court implied plaintiff could be liable on the contract under RCW 23B.02.040, and it discussed whether being liable on the contract would thereby enable the plaintiff to have standing to enforce the contract. Ultimately, the court declined to apply RCW 23B.02.040 and decided the question under common law, *White*, 78 Wn. App. at 114, so the statutory analysis is dicta. Nonetheless, *White*'s suggestion that RCW 23B.02.040 applies to postdissolution situations is consistent with legislative history.

When the Legislature enacted the WBCA, it considered comments to the legislation which had been prepared by the Corporate Act Revision Committee of the Washington State Bar Association. Those comments are included in the *Senate Journal*, 51st Leg. 2977-3112 (1989), and are indicative of legislative intent. *See Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd.*, 131 Wn.2d 345, 358, 932 P.2d 158 (1997) (a commission's final report on proposed legislation, which was submitted to the Legislature with

the bill, contributes to an understanding of legislative intent). The comment on RCW 23B.02.040 states:

> The combined effect of Proposed sections 2.03 and 2.04 is to abolish in Washington the de facto corporation doctrine and the corporation-by-estoppel (or "loose" estoppel) doctrine. The ABA Committee Comment (REVISED MODEL BUSINESS CORPORATION ACT, Official Text 44-46 (1984)) concludes from a review of recent cases that the principal equitable consideration running through recent applications of de facto and estoppel doctrines relates to the desire to protect persons who acted with the good faith belief that a corporation existed. Once the equity of that ground is acknowledged, as it is expressly in Proposed section 2.04, there is no reason not to impose liability on parties who fail to take advantage of the simple and inexpensive process of incorporation.

*Senate Journal* at 2990. This statement does not explicitly acknowledge postdissolution liability, but the general equitable principle of protecting persons "who acted with the good faith belief that a corporation existed" extends to the situation in this case: Yarmouth allegedly had a good faith belief that his corporation had not been dissolved, and as soon as he discovered the dissolution, he corrected the deficiency and reestablished J & R as a corporation. In the inverse situation, one who knows a corporation is dissolved and continues to act as the corporation could be personally liable under RCW 23B.02.040.

Our reading of RCW 23B.02.040 is further informed by examining the statute's predecessor. RCW 23B.02.040 is traceable to former RCW 23A.44.100(1). *See White*, 78 Wn. App. at 110. Former RCW 23A.44.100 stated:

> (1) All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

> (2) Subsection (1) of this section does not apply to any persons assuming to act as a corporation during a period of administrative dissolution if the corporation is subsequently reinstated under the provisions of sections 2 and 3 of this 1983 act.

Laws of 1983, ch. 32, § 9 (underlining omitted). "[S]ections 2 and 3 of this 1983 act" referred to the possibility of the corporation being reinstated within two years of dissolution.

Subsection two of former RCW 23A.44.100 expressly admits the applicability of subsection one to postdissolution situations. Subsection two can be paraphrased as saying: "Persons acting as a corporation during a period of administrative dissolution are not personally liable if they reinstate the corporation within two years of dissolution." The reverse implication is officers operating a dissolved corporation, who do not reinstate the corporation within the two year limit, *are* personally liable *under subsection one* of former RCW 23A.44.100.

Numerous cases found former RCW 23A.44.100 applied to postdissolution situations. *See, e.g., Pacesetter Real Estate, Inc. v. Fasules*, 53 Wn. App. 463, 469, 767 P.2d 961 (1989) (owners of dissolved corporation would be personally liable on loans obtained after dissolution, thereby conferring standing to challenge the loans as usurious); *Tagliani v. Colwell*, 10 Wn. App. 227, 231, 517 P.2d 207 (1973) (implying that corporate officers, who fail to pay the annual license fee three or more years in a row, would be personally liable for conducting corporate business); *see also Steenblik v. Lichfield*, 906 P.2d 872, 877-78 (Utah 1995) (finding the majority of jurisdictions have imposed liability on persons acting as a corporation after dissolution under statutes identical or similar to former RCW 23A.44.100). Since RCW 23B.02.040 is based on former RCW 23A.44.100(1), it is reasonable to assume the current version continues to apply to postdissolution situations absent express language denoting such a shift in the law.

To quote again, former RCW 23A.44.100(1), which applied to postdissolution situations, stated:

> All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

RCW 23B.02.040 states:

All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this title, are jointly and severally liable for liabilities created while so acting . . . .

Neither statute explicitly addresses postdissolution situations. The major difference between the statutes is the injection of a knowledge requirement into the new statute. The former version imposed liability on all those who assumed to act without authority so to do. The current version imposes liability only on those who act *knowing* there was no incorporation. The emphasis of the phrase, according to the official comment, should be placed on the knowledge element. The official comment says nothing as to why the word "incorporation" was introduced in the new liability statute. As mentioned above, the committee's official comment to RCW 23B.02.040 explains the new statute was intended to address the equitable concern for protecting those who act with good faith, and to otherwise abolish the common-law principles of de facto corporations and corporation by estoppel.

If the committee had planned on narrowing the scope of the liability rule to just preincorporation transactions, the official comment would have made some mention of such a substantial change. As it is, the official comment says *nothing* about removing postdissolution situations from the scope of the liability statute.

The common-law principle of de facto corporations also supports our reading of RCW 23B.02.040. Since, according to the official comment, RCW 23B.02.040 was drafted with the intent of incorporating the equitable principles behind the common-law doctrine, we can look to that doctrine to support our application of the statute. In this state, the common-law doctrine of de facto corporation has been applied to postdissolution situations. *See Patterson v. Ford*, 167 Wash. 121, 125, 8 P.2d 1006 (1932) (corporation which failed to pay the annual license fee was still a corporation de facto and its existence, or exercise of corporate powers, could not be collaterally attacked); *see also* 8 WILLIAM MEADE

FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 3844 (Timothy P. Bjur et al., eds., rev. ed. 1992) (in those states where the de facto doctrine has been applied to postdissolution situations, "the officers and directors are insulated from personal liability if they operated the corporation under a good-faith belief that its charter was still in effect." (footnote omitted)). Our reading of RCW 23B.02.040 is consistent with the equitable principles behind the de facto doctrine.

Based on our analysis of (1) the language of RCW 23B.02.040; (2) former RCW 23A.44.100 and case law applying the former statute; (3) legislative history behind RCW 23B.02.040; and (4) the common-law principle of de facto corporations, we hold RCW 23B.02.040 *does apply* to postdissolution transactions that violate the statutory restriction of winding up the corporate business. The question of Yarmouth's liability to Equipto and Draper Shade must be resolved through application of RCW 23B.02.040.

Does RCW 23B.02.040 require actual knowledge before imposing personal liability?

■ The courts in those few states which have adopted statutes similar to RCW 23B.02.040 and construed the impact of the language have found the phrase "knowing there was no incorporation" requires actual knowledge. In *Sivers v. R&F Capital Corp.*, 123 Or. App. 35, 858 P.2d 895 (1993), the court construed Oregon's personal liability statute, which states:

> "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation, are jointly and severally liable for liabilities created while so acting."

*Sivers*, 858 P.2d at 897 (quoting OR. REV. STAT. 60.054). The court held "[t]he wording of ORS 60.054 and the drafters' comments clearly indicate that the test for imposition of personal liability is one of actual knowledge." *Id.* In *Harris v. Looney*, 43 Ark. App. 127, 862 S.W.2d 282 (1993), involving a statute identical to the one construed in *Sivers*, the court found:

> [T]he Arkansas General Assembly adopted a heightened stan-

dard for imposing personal liability . . . . The Act requires that, in order to find liability . . ., there must be a finding that the persons sought to be charged acted as or on behalf of the corporation and knew there was no incorporation under the Act.

*Harris,* 862 S.W.2d at 285. *See also Weir v. Kirby Constr. Co.,* 213 Ga. App. 832, 446 S.E.2d 186, 188 (1994) (same statute as in *Sivers* "requires actual knowledge that there was no incorporation.").

Reading RCW 23B.02.040 to require actual knowledge is consistent with the official statement of the Corporate Act Revision Committee, which states the statute acknowledges the equitable consideration of protecting persons who act "with the good faith belief that a corporation existed." *Senate Journal* at 2990.

When we apply the actual knowledge requirement in RCW 23B.02.040 to this case, it becomes a question of fact as to whether Yarmouth knew J & R had been dissolved. The fact that he reestablished the corporation within days of allegedly learning of the dissolution supports his claim of lack of knowledge. On the other hand, the record is devoid of any documentary evidence supporting Yarmouth's claim that he never received any of the correspondence from the State, precluding us from resolving the factual issue. We reverse summary judgment for Equipto and Draper Shade, and we remand both cases for application of RCW 23B.02.040 and further fact-finding.

If the trial courts find Yarmouth not liable for the debts under RCW 23B.02.040, then Respondents' proper course of action is to pursue the "new" J & R for the debts of the dissolved corporation. While it is possible for a dissolved corporation to be sued, RCW 23B.14.050(2)(e), in this case we assume all the assets of the old J & R were transferred to the new J & R which Yarmouth incorporated in 1994. At oral argument, Yarmouth's attorney wisely conceded the new J & R would be liable for the old debts. *See also Jones v. Francis,* 70 Wash. 676, 681, 127 P. 307

(1912) (where an old corporation had been administratively dissolved, but continued operations, and upon discovery of dissolution the trustees organized a new corporation, the new corporation, being a mere continuation of the old, is liable for the old corporation's obligations); *cf. Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wn. App. 695, 706, 934 P.2d 715 (1997) (corporation purchasing the assets of another is liable for the seller's debts if "the purchaser is a mere continuation of the seller") (quoting *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 262, 692 P.2d 787 (1984)).

DURHAM, C.J., and SMITH, GUY, TALMADGE, and SANDERS, JJ., concur.

MADSEN, J., concurs in the result.

ALEXANDER, J. (concurring) — I agree with the majority's conclusion that the summary judgments entered against Jerry Yarmouth should be reversed and the cases remanded for trials focusing on the issue of whether or not Yarmouth knew that J & R Interiors, Inc. had been dissolved. I write specially only for the purpose of indicating my disagreement with the majority's suggestion to the respondents that if the trial court should find on remand that Yarmouth is not liable for the debts their "proper course of action is to pursue the 'new' J & R for the debts of the dissolved corporation." Majority op. at 371. It is not, in my view, appropriate for this or any other court to render such advice and thereby stir up future litigation. Yarmouth's liability was the only issue before us, and once we determined the issues relating to Equipto's and Draper's causes of action against him we should have gone no further.

JOHNSON, J. (dissenting) — The issue in this case is whether the principal of an administratively dissolved corporation is entitled to the legal "protections" of a corporation. Statutes and case law establish that where no corporation exists, no immunity is available. The majority

errs in applying and analyzing a statutory section which is inapplicable to the facts of this case. I would affirm the Court of Appeals.

This appeal arises out of two creditors' attempts to hold an individual liable on a contract signed by the individual purportedly on behalf of a corporation which did not exist. The majority misinterprets the plain language of the applicable Washington statutes in order to excuse the neglect of the defendant and finds the defendant not personally liable for the debts of an administratively dissolved corporation.[1]

Corporations are creatures of statute which derive their existence and ability to act through statutes. 1 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 2.10, at 10 (Charles R.P. Keating & Gail O'Gradney eds., rev. ed. 1990). The requirements imposed by statutes must be complied with in order to retain corporate form. Conversely, failure to comply with these duties results in no recognized corporate existence. Fundamental to corporate law, and the statutes involved here, is if a corporation does not legally exist, no corporate protections exist. Further, corporate privileges, such as limited liability, vanish whenever corporateness is disregarded. HARRY G. HENN & JOHN R. ALEXANDER, LAWS OF CORPORATIONS § 146, at 346 (3d ed. 1983). In this case, no dispute exists that the corporation was administratively dissolved and was *not* entitled to statutory reinstatement. Yet, the majority determines the statutes require the corporation or its principal to know of the dissolution.

The majority begins its analysis correctly by explaining Washington's dissolution statutes, RCW 23B.14.200-.220. However, the majority resolves this case by referring to RCW 23B.02.040, which, by its terms, does not apply. RCW 23B.02.040 is titled "Liability for Preincorporation Transactions," and states:

---

[1] J & R Interiors, Inc. was administratively dissolved in 1991; summary judgment was granted against Yarmouth personally in 1994. Hence, the dissent references the statutes in effect during this time period.

All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this title, are jointly and severally liable for liabilities created while so acting except for any liability to any person who also knew that there was no incorporation.[2]

RCW 23B.02.040 states if an individual knows that no corporation has been formed, and acts on behalf of a corporation, that individual will be held jointly and severally liable *unless* the other party to the contract also knew there was no corporation formed.

We have interpreted the similarly worded predecessor statute, former RCW 23A.44.100, and held an individual acting on behalf of the preincorporated corporation escapes joint and several liability under this statute only if the other party knew a corporation did not exist and still agreed to look to the corporation for satisfaction of the debt. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 479, 670 P.2d 648 (1983). In the entire statutory scheme, RCW 23B.02.040 is the one shield from personal liability when there is no corporation, and it applies only when both parties know there is no corporation. By its express terms, this section is limited to a specific situation. Nothing in this case supports an argument that plaintiffs knew there was no corporation at the time of contract. This fact should end any analysis under this section simply because it does not apply.

Application of the dissolution statutes resolves this case. The majority correctly states that a corporation has yearly responsibilities to maintain its corporate status, including filing an annual report with the Secretary of State, RCW 23B.16.220, and paying an annual $50 licensing fee, RCW 23B.01.530. The corporation also has the obligation to maintain a registered agent in the state. RCW 23B.05.010.

---

[2]Incorporation is defined by BLACK'S LAW DICTIONARY as "[t]he act or process of forming or creating a corporation. The formation of a legal or political body, with the quality of perpetual existence and succession, unless limited by the act of incorporation." BLACK'S LAW DICTIONARY 766 (6th ed. 1990). With the definition of incorporation in mind, it is clear this statute was intended to apply to acts which took place before the corporation was actually formed.

In this case, the defendant and his corporation failed to comply with these statutory requirements for three years. As a result of this neglect, the corporation was administratively dissolved by the Secretary of State in accordance with RCW 23B.14.200.[3]

The majority properly explains the process for administrative dissolution—it acknowledges that the corporation may not conduct any business except that business necessary to wind up business affairs.[4] The majority correctly states that the Secretary of State possesses the ability to reinstate a corporation within two years of dissolution. RCW 23B.14.210-.220. There is no question that an individual acting on behalf of a corporation that has been administratively dissolved, but reinstated during the two-year window under RCW 23B.14.220, will not be personally liable for acts that occurred during the temporary dissolution. However, that did not occur in this case; the corporation no longer existed.

Existence of a corporation shields an individual from personal liability. Limited liability has been regarded as "the corporation's most precious characteristic." Bernard F. Cataldo, *Limited Liability with One-Man Companies and Subsidiary Corporations, in* 18 LAW & CONTEMP. PROBS. 473 (1953) (quoting William W. Cook, *"Watered Stock"-Commissions-"Blue Sky Laws"-Stock Without Par Value,* 19 MICH. L. REV. 583, 583 n.4 (1921)). However, the converse

---

[3]A corporation, with regard to its registered agent, has a duty to, at the least, know the status of its chosen registered agent. RCW 23B.14.200(3) and (4) reflect this corporate statutory duty. It makes no difference whether notice from the Secretary of State was lost in the mail or whether the registered agent moved or died. Under the statute, upon administrative dissolution and expiration of the reinstatement period allowed by statute, no corporate form is recognized by the statutes and, therefore, it simply does not exist. Under the statute, whether a person has knowledge or "in good faith believes" a corporation exists is irrelevant.

[4]In this case it is not disputed that the purchase of new equipment did not constitute acts which were necessary to wind up business. If the defendant had entered into contracts that were necessary to wind up business, the statutes provide a shield from personal liability. Conversely, the statutes indicate if the acts are not necessary to wind up business, an individual may be held liable.

may also be true—if there is no corporation, then personal liability must attach.

The defendant argues he did not have knowledge that the corporation was administratively dissolved. The defendant attempts to shift the blame for his lack of knowledge to a former registered agent. The majority agrees with this argument and remands this case for a determination of whether the defendant had actual knowledge that the corporation was administratively dissolved. In effect, the majority creates a "good faith, I did not know" defense that is not found in any statute.

In this present case, the indications are that the corporate form was generally disregarded. The corporation did not pay its fees, file an annual report, or have a registered agent—all required by statute. Failure to have a registered agent, RCW 23B.14.200(3), or failure of the corporation to "notify the secretary of state that its registered agent or registered office has been changed, that its registered agent has resigned, or that its registered office has been discontinued," RCW 23B.14.200(4), are all grounds for dissolution. The express language of the statute states it is incumbent upon the corporation to notify the Secretary of State of changes; significantly, it is not the duty of the registered agent. The corporation is statutorily charged with the duty to abide by these requirements. A "good faith" breach of these basic corporate duties is not a legally recognized concept.

Whether the express statutory scheme is analyzed or common-law agency principles applied, as the Court of Appeals correctly did, since no corporation existed at the time of contract, personal liability on the contracts exists. I would affirm the Court of Appeals.